UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DMITRY PRONIN, | ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Civil Action No. 17-01807 (TJK) |
| FEDERAL BUREAU OF PRISONS, | ) ) |  |
| Defendant. | ) ) ) ) |  |

**DEFENDANT'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant Federal Bureau of Prisons ("BOP"), by and through undersigned counsel,

respectfully moves for dismissal pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), or

in the alternative, for summary judgment pursuant to Rule 56(c). In support of this motion,

Defendant respectfully refers the Court to the accompanying Memorandum of Points and

Authorities, Statement of Material Facts Not in Dispute, and exhibits. A proposed Order is also

attached.

Dated: June 22, 2018

Respectfully submitted,

JESSIE K. LIU, D.C. Bar No. 472845
United States Attorney

DANIEL F. VAN HORN,    D.C. Bar No. 924092
Chief, Civil Division

By:    /s/   *Scott Leeson Sroka*
SCOTT LEESON SROKA, Member of New York Bar
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-7113
Scott.Sroka@usdoj.gov
*Attorneys for Defendant*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DMITRY PRONIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-01807 (TJK) |
| | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

This case arises from Plaintiff Dmitry Pronin's Freedom of Information Act ("FOIA")

requests directed to BOP. Plaintiff has submitted six FOIA requests to BOP but has not indicated

in his Complaint which of these requests he intends as the subject of this litigation.[1] Therefore, he

has failed to state a claim upon which relief can be granted. As to those requests, Defendant has

reasonably complied with the requests for records submitted by Plaintiff under FOIA. Having

completed their search for responsive records subject to FOIA and withheld records under the

appropriate FOIA exemptions, Defendant respectfully move the Court to dismiss Plaintiff's

Complaint or, in the alternative, grant summary judgment pursuant to Rule 56(a) on all of

Plaintiff's claims.

---

[1] In his form Complaint, Plaintiff checked a box categorizing his claim as being brought pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971) (*see* ECF No. 1 at 1). However, Plaintiff's claim by its wording is clearly brought under FOIA against BOP, not any government official. The Court's Docket also lists the case as a FOIA case. Furthermore, Plaintiff's Complaint alleges at page 3 that Defendant acted "under color of law" "when the FOIA section of its central office unlawfully denied Plaintiff here certain categories of information."

## STATEMENT OF FACTS

Defendant incorporates herein the attached Defendant's Statement of Material Facts to Which There is No Genuine Issue.

## STANDARDS OF REVIEW

### I.      Motion to Dismiss Under Rule 12(b)(6)

Under Rule 12(b)(6), a district court may dismiss a cause of action when the Plaintiff has failed to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6); *see also Pearsall v. Holder*, 610 F. Supp. 2d 87, 93 (D.D.C. 2009). On a motion to dismiss pursuant to Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted). But a motion to dismiss should be granted if the complaint fails to "state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To satisfy this standard, a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 570. In reviewing a complaint's allegations, a "court need not accept inferences drawn by [the] plaintiff[ ] if such references are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Likewise, a court need not accept legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). In resolving a motion to dismiss, a court may consider "the facts alleged in the complaint, documents

attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).

## II.     Motion for Summary Judgment Under Rule 56

Under Rule 56 of the Federal Rules of Civil Procedure, a court will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" when it "might affect the outcome of the suit under the governing law."  *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

## III.    Discharge of FOIA Obligations

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Ryan v. Fed. Bureau of Investigation*, 174 F. Supp. 3d 486, 490 (D.D.C. 2016) (internal quotation marks omitted).  "When an agency moves for summary judgment on the grounds that it has discharged its FOIA obligations, all underlying facts and inferences are analyzed in the light most favorable to the FOIA requester, and only after the agency proves that it has fully discharged its FOIA obligations is summary judgment appropriate."  *Id.*

"An agency will be granted summary judgment on the adequacy of its search if it 'show[s] beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents.'"  *Id.*  "Adequacy 'is judged by a standard of reasonableness and depends, not surprisingly, on the facts of each case.'"  *Id.*  "[A] search may be reasonable if it includes all systems 'that are likely to turn up the information requested.'"  *Id.* at 490-91.

"To meet its burden and show adequacy, 'the agency may rely on reasonably detailed, nonconclusory affidavits submitted in good faith.'" *Id*. at 491.  "These declarations are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (internal quotation marks omitted).  "An agency can show reasonableness in its affidavit by setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id.* (internal quotation marks omitted).

"The agency need not search every record in the system or conduct a perfect search." *Judicial Watch, Inc. v. U.S. Dep't of the Treasury*, No. 15-1776 (RMC), 2017 WL 1207414, at \*2 (D.D.C. Mar. 31, 2017).  "[T]he fact that a particular document was not found does not demonstrate the inadequacy of a search." *Andrews v. Dep't of Justice*, 212 F. Supp. 3d 109, 113 (D.D.C. 2015) (internal quotation marks omitted).  Also, "the [m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *Id.* (internal quotation marks omitted).

## ARGUMENT

Defendants have appropriately searched for and provided records responsive to the requests at issue, subject to the withholding of certain information pursuant to the applicable FOIA Exemptions. It has met its obligations under FOIA's segregability requirement.

## I.   DEFENDANT COMPLIED WITH ITS OBLIGATION TO SEARCH FOR RESPONSIVE INFORMATION.

FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of the Act's nine exemptions. 5 U.S.C. § 552(b); *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150-51 (1989). Once the court determines that an agency has released all non-exempt material, it has no further judicial

function to perform under FOIA and the FOIA claim is moot. *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982), *Muhammad v. U.S. Customs & Border Prot.*, 559 F. Supp. 2d 5, 7-8 (D.D.C. 2008). Here, Defendant conducted an appropriate search and withheld records subject to appropriate withholdings permitted under FOIA.

Under FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). A search is not inadequate merely because it failed to "uncover[] every document extant." *SafeCard Servs. Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *see Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (noting that "[p]erfection is not the standard by which the reasonableness of a FOIA search is measured"). It is appropriate for an agency to search for responsive records in accordance with the manner in which its records systems are indexed. *Greenberg v. Department of Treasury*, 10 F. Supp. 2d 3, 13 (D.D.C. 1998).

**BOP Conducted Adequate Searches for Responsive Records.**

Plaintiff does not challenge any searches related to his six FOIA Requests to BOP. In fact, Plaintiff's Complaint does not even identify which FOIA request is the subject of his claim. However, BOP made reasonable efforts to locate any records potentially responsive to Plaintiff's requests.

With respect to FOIA Request 2016-02619, BOP located the records requested by Plaintiff and released a total of 149 pages of responsive records, 93 in full, seven partially released, and 49 withheld in full under appropriate exemptions. After Plaintiff's appeal to OIP, BOP partially released an additional five pages of records. Rodgers Decl. ¶ 4. BOP later issued a supplemental release to Plaintiff and re-released a page with fewer redactions than on the original release. *Id.* at ¶ 5.

With respect to FOIA Request 2017-05599, BOP located the records requested by Plaintiff and released 53 pages of responsive records, 41 in full and 12 partially released. Redactions contained in those records related mostly to Plaintiff's gender dysphoria status. *Id.* at ¶ 9. BOP later made a supplemental release to Plaintiff, identifying the names of wardens at several correctional institutions. *Id.* at ¶ 10.

With respect to FOIA Request 2017-05812, BOP determined that the records sought by Plaintiff would be maintained in his Central Inmate File, which is maintained by an inmate's name and register number and is located at the inmate's current designated facility. BOP FOIA staff requested Plaintiff's then-designated facility to search his Central Inmate File for any responsive records indicating any records concerning writs and/or any other records pertaining to Plaintiff's temporary release from BOP custody to the Baltimore County Police/homicide department responsive to this portion of Plaintiff's FOIA request. BOP issued a determination advising Plaintiff that BOP's search for records responsive to his request did not yield any responsive records. *Id.* ¶ 13.

BOP issued a supplemental release to Plaintiff. As part of the supplemental release, BOP released a report that indicates that on May 31, 2011, a move of some sort appears to have been contemplated for Plaintiff but was essentially discontinued after a period of 44 minutes on that date. These 44 minutes would have been inadequate for Plaintiff to be transported from the FDC in Philadelphia, Pennsylvania, to Towson, Maryland for the purpose Plaintiff noted. Additionally, the supplemental release noted that on the left side of the form is a list of codes indicating either the institution to which Plaintiff was attached, or a justification for the action taken. If the United States Marshals Service ("USMS") had removed Plaintiff from BOP custody for transport to Maryland, in addition to a longer period of time involved than 44 minutes, a code would have been

entered indicating the USMS involvement, and there is no such code. Staff also reviewed the electronic docket in Plaintiff's criminal case in Delaware (*United States v. Pronin*, 1:11-CR-00033 in the District of Delaware) that was ongoing at the time and provided to Plaintiff the relevant pages for the time period before and immediately after May 31, 2011, and noted that the docket reflects no evidence of judicial approval of Plaintiff's removal from BOP custody. *Id.* at ¶ 14.

With respect to FOIA Request 2017-06489, Plaintiff requested the name of the warden at FDC Philadelphia in 2011, and BOP provided Plaintiff with the specific name of the warden at FDC Philadelphia in 2011. *Id.* at ¶ 15.

With respect to FOIA Request 2018-00680, BOP advised Plaintiff that he could access his own medical records more expeditiously through the local access process and offered to provide further assistance if Plaintiff was unsuccessful. Plaintiff never indicated that he had not been permitted to access the requested records, nor did he appeal the determination to OIP. *Id.* at ¶ 16.

## II.   DEFENDANTS PROPERLY APPLIED FOIA EXEMPTIONS IN RESPONDING TO PLAINTIFF'S FOIA REQUEST.

BOP properly applied FOIA Exemptions in responding to Plaintiff's FOIA request.

### A.   BOP Properly Applied FOIA Exemption 2.

Exemption 2 protects from mandatory disclosure records related solely to the internal personnel rules and practices of an agency. 5 U.S.C. § 552(b)(2); *see Milner v. Dep't of the Navy*, 131 S. Ct. 1259, 1265 & n.4 (2011). Here, Exemption 2 was applied to a staff list that consisted only of a complete list of staff names for FCC Florence. The FCC Florence staff list is a record compiled for law enforcement purposes. The release of this information is reasonably expected to endanger the life and/or physical safety of staff since the list will allow inmates or members of the general public to look up staff through Motor Vehicle records, tax or other state open access records, and permit the location of staff home addresses for targeted threats to staff and their

families or to their real or personal property. Rodgers Decl., Attachment 5. In *Maydak v. DOJ*, 362

F. Supp. 2d 316, 322-23 (D.D.C. 2005), the Court found that Exemption 2 did not apply to a prison

staff list where BOP stated in its *Vaughn* Index that it "release[s] staff names and their titles and

salaries to the general to the general public." Here, FCC Florence does not release staff lists to

inmates or members of the general public. Declaration of Clinton Stroble[2] ("Stroble Decl.") ¶ 3.

In *Jordan v. DOJ*, 668 F.3d 1188 (10th Cir. 2011), the Tenth Circuit distinguished *Maydak* because

there, BOP "failed to establish Exemption 7's threshold requirement that the names were contained

in a record for law enforcement purposes." *Id.* at 1197. The court also noted that in *Maydak* BOP

admitted to having a policy of releasing staff names, titles, and salaries to the general public but

not to prisoners. *Id.* Here, as in *Jordan*, "there is no indication that the BOP releases the names of

[FCC Florence] staff to the general public but not to inmates." *Id. See also The News-Press v.*

*DHS*, No. 05-CV-102, 2005 WL 2921952, at *10-11 (M.D. Fla. Nov. 4, 2005) (finding that names

and signatures of low-level FEMA employees were properly redacted from disaster-assistance

documents, falling "well within Exemption 2").

Exemption 2 was also applied to redact the Individual Staff Service Record Report because

the Report relates to a specific staff member and his/her BOP service record to include the staff

member's social security number, retirement date, incentive awards, life insurance premiums, and

other salary-related information. *See James Madison Project v. CIA*, 605 F. Supp. 2d 99, 112-13

(D.D.C. 2009) (exempting various types of personnel records, including policies and procedures

regarding performance evaluations, employee grievances and complaints, employee reassignment,

Exceptional Performance Awards, and employee benefits).

---

[2] As of the time of filing this motion, Stroble was unable to provide a manually signed copy of his declaration. Defendant will file a signed copy promptly.

BOP also applied Exemption 2 to redact a Staffing and Strength Report because it not only relates to personnel matters of FCC Florence, specifically, and to BOP generally, it reflects the internal practice of BOP concerning staffing at FCC Florence and the manner in which BOP staffs FCC Florence. Categories of information redacted were: (1) descriptions of staff positions at FCC Florence and the number allocated; (2) vacancy and positions filled; and (3) staff names assigned to each position filled. Rodgers Decl., Attachment 5.

For the reasons set forth above, these records also satisfy the Supreme Court's recently established test in *Milner*. The information is related to "personnel" rules and practices. *Milner*, 131 S. Ct. at 1264. The information relates "solely" to those personnel rules and practices. *Id.* at 1265 n.4. Finally, the information is "internal," *i.e.*, the agency "keep[s] the records to itself for its own use." *Id.*

### B.       BOP Properly Applied FOIA Exemptions (b)(6) and (b)(7)(C).

As a threshold matter, FOIA Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information" would result in one of six specified harms. 5 U.S.C. § 522(b)(7). Law enforcement within the meaning of FOIA Exemption 7 includes enforcement pursuant to both civil and criminal statutes. *See, e.g., Tax Analysts v. Internal Revenue Service*, 294 F.3d 71, 76-77 (D.C. Cir. 2002).

Exemption (b)(7)(C) allows an agency to withhold records or information compiled for law enforcement purposes to the extent that production could reasonably be expected to constitute an unwarranted invasion of personal privacy. The records at issue here represent either personnel records or are "similar files" because they contain information which can be identified as applying to a particular individual. Rodgers Decl. ¶ 21.

Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must

first demonstrate that the records or information at issue were compiled for law enforcement

purposes. *Pratt v. Webster*, 673 F.2d 408, 416 (D.C. Cir. 1982); *see, e.g., Abramson v. FBI*, 456

U.S. 615, 622 (1982) (explaining that in order to assert "Exemption 7 privilege" requested record

must have been compiled for law enforcement purposes). Law enforcement agencies such as BOP

must demonstrate that the records at issue are related to the enforcement of federal laws and that

the enforcement activity is within the law enforcement duties of that agency. *See, e.g., Jefferson

v. DOJ*, 284 F.3d 172, 178 (D.C. Cir. 2002) (reiterating that Exemption 7 "covers investigatory

files related to enforcement of all kinds of laws, including those involving 'adjudicative

proceedings'" (quoting *Rural Hous. Alliance v. USDA*, 498 F.2d 73, 81 n.46 (D.C. Cir. 1974));

*Ctr. for Nat'l Policy Review on Race & Urban Issues v. Weinberger*, 502 F. 2d 370, 373 (D.C. Cir.

1974) (holding that administrative determination has "salient characteristics of 'law enforcement'

contemplated" by Exemption 7 threshold requirement); *Hidalgo v. BOP*, No. 00-1229, slip op. at

3 (D.D.C. June 6, 2001) (determining that records compiled during investigation of prisoner for

violating institutional rules and regulations satisfy threshold), *summary affirmance granted*, No.

01-5257, 2002 WL 1997999 (D.C. Cir. Aug. 29, 2002). The records at issue here were compiled

for law enforcement purposes because they were compiled in the exercise of BOP's authority under

18 U.S.C. § 3621(a), which provides: "A person who has been sentenced to a term of imprisonment

pursuant to the provisions of subchapter D of Chapter 227 shall be committed to the custody of

the bureau of Prisons until the expiration of the term imposed, or until earlier release for

satisfactory behavior pursuant to the provisions of section 3624." Rodgers Decl. ¶ 22. BOP is the

primary law enforcement agency responsible for the management and regulation of all federal

penal and correction institutions pursuant to 18 U.S.C. § 4042(a)(1). *Id.*, Attachment 5.

BOP also withheld documents under FOIA Exemption 6, which protects from disclosure records related to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." To determine whether Exemption 6 would protect the information in question from disclosure, the agency must determine whether (1) the information in question is contained in personnel, medical, or "similar" files, and (2) disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy by balancing the public's right to disclosure of the information against the individual's right to privacy. *See Multi Ag Media LLC v. USDA*, 515 F.3d 1224, 1228 (D.C. Cir. 2008); *News-Press v. DHS*, 489 F.3d 1173, 1196-97 (11th Cir. 2007).

The Supreme Court has ruled that the term "similar files" encompasses any government record that concerns a particular individual; the term is not limited to records contained in personnel or medical files. *See, e.g., Dep't of State v. Washington Post*, 456 U.S. 595, 599-603 (1982). This broad construction of "similar files" was necessary in view of Congress's primary purpose in enacting Exemption 6, which was "to protect individuals from the injury and embarrassment that can result from the necessary disclosure of personal information." *Id*. at 599.

Information withheld pursuant to Exemptions (b)(6) and (b)(7)(C), pertains to the names of law enforcement personnel who prepared, or assisted with the preparation in the performance of their law enforcement duties, relating to maintaining custody of Plaintiff, and the protection of the federal judicial process. *Id. See Moore v. Bush*, 601 F. Supp. 2d 2, 14 (D.D.C. 2009) (concluding that release of name and phone number of an FBI support employee and the name of a Special Agent "could subject the Agent and employee to harassment") (Exemptions 6 and 7(C)); *Fischer v. DOJ*, 596 F. Supp. 2d 34, 47 (D.D.C. 2009) (upholding Exemption 7(C) to protect agency employees, including "support personnel," as "[t]he D.C. Circuit has consistently held that

Exemption 7(C) protects the privacy interests of all persons mentioned in law enforcement records").

Here, the categories of information BOP withheld pursuant to Exemptions 6 and 7(C) were limited to the following: (1) staff lists; (2) staff service records that included the staff name, social security number, retirement date, incentive awards received, life insurance premiums, and pay information; (3) name and register number of third-party inmates; (4) staff direct-dial telephone numbers; (5) staff DOJ e-mail addresses; and (6) names of third-parties. Rodgers Decl. ¶ 24. Disclosure of an individual staff member's name does not shed light on the activities of the BOP sufficient to overcome the staff member's substantial privacy interest. Therefore, the balance swings in favor of non-disclosure. *Id.; see Yelder v. DOD*, 577 F. Supp. 2d 342, 346 (D.D.C. 2008) (noting that information such as names, addresses, and other personally identifying information creates a palpable threat to privacy); *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 304, 306 (D.D.C. 2007) (stating that "[f]ederal courts have previously recognized a privacy interest in a person's name and address" and concluding that "[g]enerally, there is a stronger case to be made for the applicability of Exemption 6 to phone numbers and addresses"); *Associated Press v. DOJ*, 549 F.3d 62, 65 (2d Cir. 2008) ("Personal information, including a citizen's name, address, and criminal history, has been found to implicate a privacy interest cognizable under the FOIA exemptions) (Exemptions 6 and 7(C)); *Int'l Bhd. Of Elec. Workers Local No. 5 v. HUD*, 852 F.2d 87, 89 (3d Cir. 1988) (perceiving no public interest in disclosure and therefore protecting employees' social security numbers).

Here, BOP properly withheld Individual Staff Service Record Reports because the Report relates to a specific staff member and his/her BOP service record to include the social security number of the staff member, his/her retirement date, incentive awards, life insurance premiums,

and other salary-related information. The Individual Staff Record is also a "similar file" within the meaning of FOIA because it contains personal information about a named person and such information relates to terms and conditions of employment of the individual. The Report was evaluated for segregability and any exemptions applied were made with a good faith determination that the information withheld fit the FOIA exemption. Rodgers Decl. Attachment 5.

The information withheld from these reports included: (1) the name of the staff member; (2) staff member BOP service information; (3) social security number; (4) staff member retirement date; (5) staff member incentive awards; (6) staff member life insurance premiums; and (7) staff member pay information. The information redacted applied to a particular, identifiable individual. BOP staff have a privacy interest in terms and conditions of their employment, including information related to their Service Record as identified in items 1 through 7 above. Disclosure of an individual staff member's Service Record does not shed light on the activities of BOP sufficient to overcome the staff member's substantial privacy interest; thus, the balance swings in favor of non-disclosure. *Id.*

Furthermore, as these records are law enforcement records, and since the staff members at issue hold primary law enforcement positions, the release of this information is reasonably expected to endanger the life and/or physical safety of staff since it will allow inmates or members of the general public to look up staff through Motor Vehicle records, tax or other state open access records, and permit the location of staff home addresses for targeted threats to staff and their families or to their real or personal property. *Id.*

## C.   BOP Properly Applied FOIA Exemption 7(F).

Exemption 7(F) protects law enforcement information that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). Here, the

categories of information withheld pursuant to Exemption 7(F) by BOP were limited to: (1) Statements of Safety Issues for Plaintiff; (2) Status Issues for Plaintiff; (3) criminal justice issues and open investigations; (4) names of third-party inmates; (5) staff intake notes related to an assessment pursuant to the Prison Rape Elimination Act ("PREA"); (6) specific aspect of Plaintiff's criminal history; (7) sexual orientation and identification information of the Plaintiff; and (8) the name of a third-party. Rodgers Decl. ¶ 27.

Information redacted pursuant to Exemption 7(F) included information relating to a specific inmate and is part of a law enforcement record prepared as a part of PREA, a law intended to deter the sexual assault of prisoners. Because of the sensitive nature of the PREA assessment and due to correctional management acumen in knowing that certain inmates are a greater risk of physical and sexual assault based on certain risk factors, to include either a history of sexually abusive behavior or prior sexual abuse, the release of this information to another incarcerated inmate will subject the inmate to either threats of violence or actual physical violence to include sexual violence while incarcerated. Rodgers Decl., Attachment 5.

Exemption 7(F) is appropriately invoked to protect the names and identifying information of prison inmates. *See Anderson v. U.S. Marshals Serv.*, 943 F. Supp. 37, 40 (D.D.C. 1996) (protecting identity of inmate who required separation from incarcerated requester when disclosure could endanger his safety); *Lee v. DOJ*, No. 04-1013, 2007 WL 2852538, at \*7 (W.D. Pa. Sept. 27, 2007) (finding agency properly withheld "names and personal information" about inmates involved in investigations of wrong-doing at correctional facilities because disclosure could subject them to "retaliatory physical harm"); *Brady-Lunny v. Massey*, 185 F. Supp. 2d 928, 932 (D.C. Ill. 2002) (finding that release of inmates' names would endanger life and physical safety "given inmates' gang ties, interest in escape, and motives for violence").

**III.     DEFENDANTS COMPLIED WITH FOIA'S SEGREGABILITY REQUIREMENT**

Under FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information must be disclosed after redaction of the exempt information. 5 U.S.C. § 552(b).  Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Justice*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008).  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

With respect to FOIA Requests 2016-02619 and 2017-05599, the records were reviewed and all reasonably segregable portions of the records were released to Plaintiff after deletion of the portions that are exempt. The specific document type, pages where any exemptions were applied, a description of the exemptions, and a non-conclusory detailed rationale for the application of the exemption are described in the attached *Vaughn* Index. Rodgers Decl. ¶ 6, 11 and Attachment 5.

Defendant has thus established, with reasonable specificity, that responsive documents were released in full or in part after a careful determination that there were no further reasonably segregable portions appropriate for release. Therefore, the Court should find that Defendant has properly complied with its duty to segregate exempt from non-exempt information.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint or, in the

alternative, conclude that Defendant complied with its FOIA obligations by conducting adequate

searches and grant summary judgment in its favor.

Dated: June 22, 2018                     Respectfully submitted,

                                         JESSIE K. LIU, D.C. Bar No. 472845
                                         United States Attorney

                                         DANIEL F. VAN HORN,     D.C. Bar No. 924092
                                         Chief, Civil Division

                     By:     /s/   *Scott Leeson Sroka*
                                         SCOTT LEESON SROKA, Member of New York Bar
                                         Assistant United States Attorney
                                         555 Fourth Street, N.W.
                                         Washington, D.C. 20530
                                         (202) 252-7113
                                         Scott.Sroka@usdoj.gov

                                         *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I  HEREBY CERTIFY that on this 22nd day of June 2018, I caused a true and correct

copy of the foregoing **Motion to Dismiss or, In the Alternative, for Summary Judgment and**

**related documents** to be sent by First Class Mail, postage paid, to:

Dmitry Pronin
R06763-015
COLEMAN MEDIUM
A1
FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. Box 1032
Coleman, FL 33521


    /s/ *Scott Leeson Sroka*
SCOTT LEESON SROKA
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
Office: (202) 252-7113
Email: Scott.Sroka@usdoj.gov